
FILED
2024 Feb-26  PM 04:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHERRY LYNN VARDAMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:23-cv-38-ACA** |
| | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| **COMMISSIONER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Sherry Lynn Vardaman appeals the decision of the Commissioner of Social Security denying her claim for supplemental security income. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I.   PROCEDURAL HISTORY

Ms. Vardaman applied for supplemental security income, alleging disability beginning February 4, 2020. (R. at 55). The Commissioner denied Ms. Vardaman's claim and her motion for reconsideration. (*Id.* at 85–96). Ms. Vardaman then requested a hearing before an Administrative Law Judge ("ALJ") (*Id.* at 97). After holding a hearing (*id.* at 31–53), an ALJ issued an unfavorable decision (r. at 16–26). The Appeals Council denied Ms. Vardaman's request for review (*id.* at 1–6),

making the Commissioner's decision final and ripe for judicial review, *see* 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ

does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III.   ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ must determine whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has "a severe medically determinable physical or mental impairment" or combination of impairments; (3) the impairment "meets or equals" a listed impairment; (4) in the light of the claimant's residual functional capacity, the claimant can perform past relevant work; and (5) in the light of the residual functional capacity and vocational factors, the claimant can make an adjustment to other work available in significant numbers in the national economy. *Winschel*, 631 F.3d at 1178; *accord Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1057 (11th Cir. 2021).

Here, the ALJ determined that Ms. Vardaman had not engaged in substantial gainful activity since her application date of February 4, 2020. (R. at 18). The ALJ found that Ms. Vardaman's status after her surgery on her foot/ankle, foot/ankle sprain, and migraine headaches were severe impairments, but that her restless leg syndrome, gastroesophageal reflux disease, and depression were non-severe impairments. (*Id*. at 18–19). The ALJ then concluded that Ms. Vardaman does not have an impairment or combination of impairments that meets or medically equals

the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix

1. (*Id.* at 20–21).

After considering the evidence of record, the ALJ determined that Ms. Vardaman had the residential capacity to perform light work with additional restrictions including, in relevant part, "can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs." (*Id*. at 21) (emphasis omitted). The regulations provides that light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). A "light work" job "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id*.

Based on this residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Ms. Vardaman could perform jobs that exist in significant numbers in the national economy, such as bakery worker, assembler, and marker. (R. at 25). Accordingly, the ALJ found that Ms. Vardaman was not disabled, as that term is defined in the Social Security Act, from her application date. (*Id.* at 26).

## IV.  DISCUSSION

Ms. Vardaman argues that the court should reverse the Commissioner's decision because: (1) the ALJ did not properly evaluate Ms. Vardaman's subjective

pain testimony; (2) the ALJ erred in her consideration of the medical opinion evidence and failed to properly determine Ms. Vardaman's residual functional capacity;[1] (3) the ALJ failed to fully and fairly develop the record. (*See* doc. 16 at 6). The court examines each argument in turn.

1.   <u>Subjective Pain Testimony</u>

Ms. Vardaman contends that the ALJ failed to properly evaluate her subjective complaints of pain in accordance with the Eleventh Circuit's subjective testimony standard. (Doc. 16 at 12–15).

Under Eleventh Circuit precedent, a claimant attempting to establish disability through testimony of pain or other subjective symptoms must show evidence of an underlying medical condition and either (1) "objective medical evidence that confirms the severity of the alleged [symptoms] arising from that condition" or (2) "that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged" symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks omitted).  If the ALJ finds a claimant's statements about her symptoms are not credible, the ALJ must "provide[ ] a detailed factual basis for [the] credibility determination," which substantial

---

[1] Ms. Vardaman argues in separate sections that the ALJ erred in finding that she could engage in light work and that the ALJ improperly determined her residual functional capacity. (*See* doc. 16 at 6). These two arguments rely on overlapping regulations and are interconnected. (*See id*. at 7–12). Accordingly, the court considers them together.

evidence must support. *Moore v. Barnhart*, 405 F.3d 1208, 1212 & n.4 (11th Cir. 2005).

During Ms. Vardaman's hearing, she testified that she is not able to work because of her right ankle and neck pain, migraine headaches, and depression. (R. at 38, 47). She testified that that her pain level "on an average day" is at a 7 or 8 in her right ankle and at "[a]bout a 6" in her neck. (*Id*. at 47–48). Ms. Vardaman further testified that her prescribed medications do "not really" help with her ankle or neck pain. (*Id*. at 40, 45). Ms. Vardaman testified that her prescribed medications help "sometimes" with controlling her migraine headaches and depression. (*Id*. at 40, 42).

Ms. Vardaman testified that she relies on her daughter to drive her, do the grocery shopping, do her household chores, and otherwise complete activities of daily living. (R. at 43, 46–47). She reported that she can stand or walk for "[m]aybe five minutes" before she must sit down and that she is able to sit for "[m]aybe ten minutes." (*Id*. at 42). She also testified that her neck pain prevents her from turning her neck to the right. (*Id*. at 48).

After reviewing Ms. Vardaman's subjective testimony, the ALJ found that Ms. Vardaman's "medically determinable impairments could reasonably be expected to cause some symptoms," but Ms. Vardaman's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id*. at 21–

22; *see also* r. at 22–24). The ALJ accurately summarized Ms. Vardaman's recent medical records, in which her providers noted that she had a "normal gait," her "migraines were well controlled" with medication, she had "normal movement of all extremities," "normal range of motion in her neck," and her ankle medication "was working good for her . . . pain." (*Id*. at 22–23).

Specifically, in October 2019, Ms. Vardaman had a normal range of motion and denied neck pain. (*Id*. at 275, 277). In 2020, Ms. Vardaman twisted her foot but the x-ray showed no acute fracture, subluxation, or abnormalities. (*Id*. at 519, 529). In July 2020, Ms. Vardaman had a surgery to correct a foot/ankle deformity (*see* r. at 629–31), and she reported that she "ha[d] been doing well overall" in her follow up appointments after the procedure (*id*. at 574). In August 2020, Ms. Vardaman reported that her pain was "under control" (*id*. at 569), but a month later, she reported experiencing ankle pain again (*see* r. at 564). In December 2020, Ms. Vardaman had a "normal gait" and appears to have weaned out of her boot. (*See id*. at 654).

Ms. Vardaman contends that the ALJ "failed to articulate adequate reasons for discrediting [her] testimony" regarding her pain level and erroneously rejected her testimony solely on the ground that no objective medical evidence established her level of pain. (*See* doc. 16 at 13–14). But the ALJ identified instances in which Ms. Vardaman's testimony contradicted her medical record and based her credibility determination on Mr. Vardaman's own reports to her providers and her providers'

notes about her functioning. (*See* r. at 22–23). Therefore, the ALJ considered Ms. Vardaman's subjective complaints with the record as a whole and adequately explained her decision not to fully credit Ms. Vardaman's alleged limitations on her ability to work. *See Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1278–79 (11th Cir. 2024).

      2.    <u>Opinion Evidence and Residual Functional Capacity</u>

Ms. Vardaman's second argument is that the ALJ erred in her consideration of the medical opinion evidence and failed to properly determine Ms. Vardaman's residual functional capacity. (Doc. 16 at 7–12).

The ALJ found Ms. Vardaman has the residual functional capacity to perform work at a light exertion with the following modifications:

> can occasionally operate foot controls; can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; can tolerate a moderate noise intensity level . . . ; can tolerate occasional exposure to light as bright as sunlight; occasional exposure to fumes, odors, dusts, gases, and poor ventilation; and no exposure to hazards such as unprotected heights, hazardous machinery, or commercial driving.

(R. at 21) (emphasis omitted). Ms. Vardaman appears to contend that the limits assessed by the ALJ are inconsistent as a matter of law with light work. (Doc. 16 at 9; *see also id*. at 8–10). The basis for this argument is not entirely clear. (*See id*. at 8–10).

To the extent that Ms. Vardaman contends that the frequency of stooping is inconsistent with light work as defined by SSR 83-10, 1983 WL 31251 (S.S.A. 1983-91), which is binding on ALJs, *see* 42 C.F.R. § 402.35(b)(1), the court rejects that argument. The regulation provides that "the majority of light jobs can be accomplished with occasional, rather than frequent, stooping," but the regulation does not state that frequent stooping is impermissible. (*Compare* doc. 16 at 9), *with* SSR 83-10, 1983 WL 31251, at *5.  And to the extent Ms. Vardaman contends that the ALJ's determinations regarding her ability to walk and stand are inconsistent with light work, the court also rejects that argument. The regulation acknowledges that light work can "involve[] sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls." (*Compare* doc. 16 at 9), *with* SSR 83-10, 1983 WL 31251, at *5. Accordingly, the court struggles to discern how the ALJ's determination is inconsistent with light work.

Ms. Vardaman next argues that "[t]he ALJ apparently failed to consider [her] neck problems." (Doc. 16 at 11). The record does not support this assertion. The ALJ acknowledged that Ms. Vardaman was alleging disability based, in part, on her neck problems. (R. at 21). Although the ALJ did not address whether Ms. Vardaman's neck pain was a severe or non-severe impairment (*see id*. at 18–20), she considered the medical records showing that in October 2019 and June 2020, Ms. Vardaman's providers found her to have a normal range of motion in her neck, no neck stiffness,

and no complaints of neck pain. (*Id*. at 22). The ALJ ultimately determined that Ms. Vardaman's testimony was "not entirely consistent with the medical evidence . . . in the record." (*Id*. at 22).

Ms. Vardaman next argues that because of her "well documented problems with her right foot," the ALJ's assessment of her residual functional capacity is unsupported by substantial evidence. (Doc. 16 at 7–9). Ms. Vardaman does not identify specific medical opinions that she contends the ALJ did not appropriately consider and instead asserts that the ALJ made her "findings 'out of thin air' as there was no credible evidence to suggest that" she could do the tasks outlined in her residual function capacity. (*See id*. at 9). But the record does not support this assertion, and in any event, the burden is on Ms. Vardaman, as the claimant, to provide evidence showing her residual functional capacity. *See* 20 C.F.R. § 404.1512(a).

The ALJ accurately summarized Ms. Vardaman's medical records, including her recent ankle surgery in July 2021. (R. at 22–23; *see also id*. at 717). The ALJ acknowledged that two consultive physicians determined that Ms. Vardaman had the residual functional capacity to perform medium exertion. (*Id*. at 24). But the ALJ disagreed with those findings in the light of Ms. Vardaman's most recent surgery and determined that "work at the light exertional level [wa]s more appropriate." (*See id*.).

At its core, Ms. Vardaman's argument is not about the ALJ's evaluation of the objective medical evidence but rather about how the ALJ evaluated Ms. Vardaman's own testimony regarding her pain. (*See*, *e.g.*, doc. 16 at 9). But the court will not "decide the facts anew, reweigh the evidence, or substitute" the court's "judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation marks and alteration omitted); *see also Crawford*, 363 F.3d at 1158–59.

Finally, Ms. Vardaman appears to argue that the ALJ's hypothetical question to the vocational expert was flawed because it did not account for her potential absenteeism and attention span problems. (*See* doc. 16 at 10). During the administrative hearing, the vocational expert testified there were jobs Ms. Vardaman could perform based on the ALJ's hypothetical question that incorporated Ms. Vardaman's residual functional capacity. (R. at 49–51). The vocational expert further testified that "if a person is consistently missing two or more days a month then they're unable to maintain their employment in these types of jobs." (*Id*. at 52). The vocational expert testified similarly about the inability to maintain concentration for at least two hours at a time during the workday. (*See id*.).

But the only evidence Ms. Vardaman relies on to support the assertion that she would be frequently absent for health-related reasons and would struggle to maintain concentration during the workday is her own testimony. (*See* doc. 16; *see also* r. at 42) (testifying that her medication makes her "sleepy all the time"). Indeed,

11

the medical evidence in the record indicates that Ms. Vardaman was often "[a]lert" and "[o]riented." (*See*, *e.g.*, r. at 311, 556, 566, 677).

Much like Ms. Vardaman's previous arguments, this argument is not about whether the ALJ's hypothetical question to the vocational expert was flawed but rather about how the ALJ evaluated Ms. Vardaman's testimony. (*See*, *e.g.*, doc. 16 at 9). But the court will not "decide the facts anew, reweigh the evidence, or substitute" the court's "judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation marks and alteration omitted); *see also Crawford*, 363 F.3d at 1158–59. Accordingly, the court will not disturb the ALJ's articulated findings.

3.   Duty to Develop the Record

Ms. Vardaman's final argument is that the ALJ "failed in her duty to develop the record" because she "should have referred [Ms. Vardaman] for a consultative evaluation of her neck and foot problems." (Doc. 16 at 15–16).

"The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). The ALJ had sufficient evidence to make an informed decision. Accordingly, the ALJ did not fail her duty to develop the record.

## V.    CONCLUSION

Substantial evidence supports the ALJ's denial of Ms. Vardaman's application for supplemental security income. Therefore, the court **WILL AFFIRM** the Commissioner's decision.

**DONE** and **ORDERED** this February 26, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE